

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

April 8, 1939

Honorable Robert F. Cherry
County Attorney
Meridian, Texas

Dear Sir:

Opinion No. O-372

Re: Distribution of common
school district local
taxes by county board of
trustees

We are in receipt of your letter of February 14, 1939, in which you request the opinion of this Department upon the following question:

"May the county board of trustees by resolution legally order the distribution of funds recovered from a tax collector in a proportion arbitrarily arrived at based upon the assessed valuation for a given year of the respective common school districts?"

Accompanying this question, is a resolution passed by the county board of school trustees and a statement of facts, which facts are substantially as follows:

"Recently a firm of auditors has audited the books of a former tax collector of your county and as a result of said audit, it has been determined that said tax collector failed to account to the school depository for all of the school taxes collected by such officer. The total amount of taxes collected and not accounts for since January 1, 1935, is in the aggregate sum of $2,838.16 of which amount $100.00 has been determined to be due the Morgan Independent School District and $2,738.16 is due to the common school districts of the county collectively. Since the delinquent tax rolls are in bad shape, and it is found that it will be difficult and expensive to discover accurately the amount out of the total sum recovered which should be cred ted to each individual common school district in the county, the county board of school trustees has passed a resolution whereby the county superintendent

is authorized and instructed to distribute $100 of the money recovered to the Morgan Independent School District and the balance to the common school district according to their assessed valuations for the year 1938 to be credited to their local maintenance and sinking fund instead of making an audit to determine the exact amount due each district and instructing the county depository to credit each common school district with the amount of taxes collected from such school district.

Article 2795, Revised Civil Statutes, 1925, provides that the commissioners' court shall levy the common school district taxes at the same time of levying taxes for county purposes, and it is further provided as follows:

". . . The tax assessor shall assess said tax as other taxes are assessed and make an abstract showing the amount of special taxes assessed against each school district in his county and furnish the same to the county superintendent on or before the first day of September of the year for which said taxes are assessed . . . The tax collector shall collect said taxes as other taxes are collected. The tax assessor shall receive a commission of one-half of one percent for assessing such tax, and the tax collector a commission of one-half of one per cent for collecting the same. The tax collector shall pay all said taxes to the county treasurer, and said treasurer shall credit each school district with the amount belonging to it, and pay out the same in accordance with law."

Article 2826, Revised Civil Statutes, 1925, defines the term "county treasurer" as follows:

"The terms 'county treasurer' and 'county treasury', as used in all provisions of law relating to school funds, shall be construed to mean the county depository. The commissioners court shall file with the State Department of Education a copy of the bond of said depository to cover school funds. No commission shall be paid for receiving and disbursing school funds."

The foregoing articles clearly demonstrate that it was not within the contemplation of the Legislature that the county school board or any other officers should make any allocation or transfer of the local taxes collected in the common school districts of the county. These taxes when collected from a particular school district are to be placed to the credit of such school district to be used

for school purposes in that district. The mere fact that the taxes levied in the various common school districts may be collected by the same person or officer does not change the character of these funds nor would they loose their identity.

In Watson v. El Paso County, (T.C.A. 1918), 202 S. W. 126, it was held that the county was not authorized to bring suit against a county tax collector to recover school funds collected for common school districts under facts similar to those presented here, but that the trustees of the various common school districts were the proper parties plaintiff to recover such funds.

Our school laws contain various provisions authorizing the county board of trustees and the county superintendent to apportion state and county available school funds among the various districts but in each instance the funds which are apportioned to the districts by these officers have been apportioned to or collected by the county as a unit and then divided amont the districts in the county. In each instance, the specific method and basis for making such apportionment is provided in the statutes, and Article 2699 contains the further provision that "no part of the school funds apportioned to any district or county shall be transferred to any other district or county," except as provided by the transfer statutes.

It is manifest that an arbitrary distribution of local school taxes, collected by the common school districts over a period of years, based only upon the assessed valuation for one given year would effect a transfer of a portion of such funds from one ..... district to the benefit of another, and we have been unable to find any statutory authorization for such action on the part of the county board of school trustees.

We are of the opinion that your question should be answered in the negative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Cecil C. Cammack
Assistant

CCC:N:iw

APPROVED
(S) GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

CK (S) ORL